IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID JOHN LONGWAY,

                     Plaintiff,                       OPINION & ORDER

    v.
                                             13-cv-556-jdp

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                     Defendant.

---

       Plaintiff David John Longway seeks judicial review of a final decision of the Commissioner of Social Security finding him not disabled within the meaning of the Social Security Act. Plaintiff asserts that remand is warranted because the Administrative Law Judge (ALJ) erred by failing to give the opinion of plaintiff's treating psychiatrist proper weight and consideration. The ALJ applied the relevant factors to the treating source opinion and found that they did not favor according it controlling weight. In fact, based on the inconsistency of the opinion with the rest of the record, the ALJ accorded the opinion only "little weight." In so doing, the ALJ did not err. The court therefore affirms the Commissioner's decision.

## BACKGROUND

### A.  Procedural Background

       Plaintiff was born on October 31, 1975. He finished high school and completed approximately half of a semester of college work. He worked as a certified nursing assistant for four years, served in the military for a few months, worked in fast food, and last worked in 2006 as an overnight inventory stocker for Shopko Industries. In addition to physical impairments, plaintiff suffers from attention deficit hyperactivity disorder (ADHD), depression, and anxiety.

On May 27, 2010, plaintiff applied for Social Security disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Act.[1] His application was denied initially and again on reconsideration. R. 107-27. Plaintiff requested a hearing and appeared with counsel before ALJ Arthur J. Schneider on May 15, 2012. Also present at the hearing were Larry L. Larrabee, PhD, an impartial medical expert and clinical psychologist, and Stephen H. Porter, a vocational expert (VE). On June 13, 2012, plaintiff received an unfavorable decision from the ALJ, finding that he was not disabled during the applicable time period. R. 22-34. Plaintiff appealed the decision to the Appeals Council, which denied his request on June 19, 2013, making the ALJ's decision the final determination of the Commissioner. R. 13-15. On August 8, 2013, plaintiff timely sought judicial review in this court under the Social Security Act, 42 U.S.C. § 405(g).

## B.  Relevant Medical Evidence

Plaintiff claims that his disability began on October 1, 2005, but, because he has already had these claims decided unfavorably, his onset date begins the day after his last denial, which is May 10, 2008. The last date of plaintiff's insurance coverage was March 31, 2010. This date is relevant to his application for disability insurance benefits and it creates a window within which plaintiff must establish a disability. The deadline does not apply to his application for supplemental security income. *Liskowitz v. Astrue*, 559 F.3d 736, 740 n.2 (7th Cir. 2009).

In his application, plaintiff asserted limitations in his left arm from an elbow fracture that he suffered as a child, obesity, migraine headaches, asthma, ADHD, depression, anxiety

---

[1] Plaintiff previously applied for disability benefits on November 21, 2005, and was denied on May 9, 2008, following a hearing in front of an ALJ. He appealed the decision, but it was affirmed by the Appeals Council. He then filed a new application in 2010, which is the basis of this case.

disorder, diabetes mellitus, hypertension, neck pain, and back pain. Only plaintiff's mental impairments are relevant to this case. In July 2005, plaintiff began seeing his treating psychiatrist George Melnyk, MD. According to Dr. Melnyk, plaintiff visited him 26 times between July 14, 2005, and September 8, 2009. During that time, Dr. Melnyk prescribed and adjusted various medications and treatments to address plaintiff's ADHD, adjustment disorder, depression, and anxiety. From time to time, plaintiff stopped taking his medications or following his treatment plan for different reasons without Dr. Melnyk's permission.[2] When discovered, Dr. Melnyk would reinitiate plaintiff's treatment and encourage plaintiff to maintain compliance. Dr. Melnyk also assessed plaintiff's impairments and, in December 2009, completed a mental residual functional capacity questionnaire. R. 705-10. In the questionnaire, Dr. Melnyk opined that plaintiff was "seriously limited but not precluded" from or "unable to meet competitive standards" relating to 25 different work-related mental activities because of his impairments. Some examples of these activities include: understanding instructions; remembering procedures; maintaining attention; sustaining a routine; and asking questions or requesting assistance.

Plaintiff has continued to seek care for his mental health impairments and, since the 2009 assessment, other doctors have evaluated plaintiff's mental health on various occasions. One examination from October 2010 was particularly relevant because it contradicted Dr. Melnyk's opinion. James F. Hobart, PhD, examined plaintiff and summarized his observations and conclusions in a detailed report. R. 433-37. Dr. Hobart specifically evaluated plaintiff's mental status and reported the results of various mental exercises that plaintiff successfully

---

[2] Plaintiff claims that the record shows only two instances of noncompliance. Dkt. 13, at 17, *citing* R. 496 and 506. The Commissioner rebuts this point with several additional instances of unexplained noncompliance in the record. Dkt. 20, at 11-12, *citing* R. 28, 357, 537, 625, 638, and 645.

completed. Dr. Hobart concluded that plaintiff had the capacity to understand, remember, and carry out simple work-related instructions and had no demonstrable difficulty with concentration or attention.

## C.  The Administrative Hearing and Decision

On May 5, 2012, the ALJ held a video hearing and took testimony from plaintiff, Dr. Larrabee, and the VE. The ALJ asked plaintiff about his work history, daily activities, and medical conditions. Plaintiff testified that he has difficulty manipulating things with his left hand and lifting with his left arm. He described his mental health issues, including his ADHD and anxiety, as well as his treatment strategies. He also discussed his difficulty maintaining employment because of his impairments and described how he has trouble maintaining attention and motivation.

Dr. Larrabee reviewed plaintiff's medical records and testified at the hearing about a psychiatric review technique form, dated December 6, 2010, and signed by Roger Rattan, PhD. R. 88-89, *referencing* R. 446-59. He stated that Listings 12.02, 12.04, and 12.06, which relate to various mental disorders, may apply in plaintiff's case. The ALJ then asked the VE hypothetical questions regarding a worker with plaintiff's vocational profile who had several different limitations. Depending on the limitations, the VE testified that there could be jobs that plaintiff could do, including work as a cashier, production assembler, or ticket-taker. Given other, more severe hypothetical limitations presented by the ALJ, the VE testified that there was no work that plaintiff would be able to do.

The ALJ issued a written decision, analyzing each of the five steps of the regulatory sequential analysis and concluding that plaintiff was not disabled. R. 22-34. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his onset date

of May 10, 2008. R. 24. At step two, the ALJ found that plaintiff had the following severe impairments: history of left elbow fracture, obesity, migraine headaches, asthma, ADHD, depression, and anxiety disorder. *Id.* The ALJ found that plaintiff's diabetes and hypertension did not cause him more than minimal work-related limitations. He also found that plaintiff's neck and back pain were not related to any medically determinable impairment.

At step three, the ALJ considered four different impairments listed in 20 C.F.R. part 404, subpart P, appendix 1, but found that plaintiff did not meet or medically equal any of them. The ALJ found that plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but with additional limitations. R. 27. He limited plaintiff to no more than frequent handling and fingering with the left, non-dominant, upper extremity. He also found that plaintiff must avoid concentrated exposure to fumes, odors, dust, gases, chemicals, unprotected hazardous heights and dangerous machinery. He found that plaintiff is only available for simple, routine, and repetitive tasks, but that he is able to understand, remember, and carry out simple instructions, as well as respond appropriately to supervisors, coworkers, and the public, and adjust to routine changes in the workplace. At step four, the ALJ found that with these limitations, plaintiff could not perform his past relevant work as a certified nursing assistant. At step five, the ALJ found that plaintiff could perform work as a production assembler, cashier, and ticket-taker and therefore was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff contends that the ALJ erred by failing to give proper weight and consideration to the opinion of Dr. Melnyk, plaintiff's treating physician. In 2009, Dr. Melnyk completed a mental residual functional capacity questionnaire, checking boxes to indicate his opinion that

plaintiff was "seriously limited but not precluded" or "unable to meet competitive standards" in all 25 work-related mental activities listed on the questionnaire, including: understanding, remembering, and carrying out very short and simple instructions; maintaining attention; sustaining ordinary routine without special supervision; making simple decisions; and maintaining socially appropriate behavior. R. 705-10. The ALJ accorded this opinion "little weight." R. 31. Plaintiff now seeks review of the ALJ's decision in this court.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to disregard Dr. Melnyk's opinion and deny plaintiff benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

It is the ALJ's role to weigh every medical opinion in the record regarding a plaintiff's impairments, but treating physicians are generally accorded more weight than other sources. 20 C.F.R. §§ 404.1527(c), 416.927(c). If a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record," the ALJ will give controlling weight to the opinion. *Id.*; *see*

*also Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). If the opinion is not well-supported, as the ALJ found Dr. Melnyk's opinion to be, it is within the ALJ's discretion to accord it less than controlling weight.

The first determination for the ALJ to make is whether, as treating physician, Dr. Melnyk's opinion was entitled to controlling weight. If not, the next determination is how much weight to accord it. Dr. Melnyk's opinion is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ found that Dr. Melnyk's opinion was, in fact, inconsistent with other evidence. R. 32. In addition to Dr. Melnyk's opinion, the ALJ considered not only the opinions of two agency doctors, one of whom examined plaintiff, but also plaintiff's testimony and the medical record itself.  Because of the inconsistencies between that evidence and Dr. Melnyk's opinion, the ALJ declined to accord it controlling weight. In fact, the ALJ gave the opinion only "little weight" and adequately explained his reasoning for doing so.

When an ALJ declines to give controlling weight to a treating source, as the ALJ did in this case, he must then apply the factors listed in § 404.1527(c) and § 416.927(c) to determine what weight to give the opinion and he must "provide a sound explanation" for the decision. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Where an ALJ provides "sound reasons for discounting [a treating doctor's] opinions" and "adequately explain[s] those factors that were material to his decision," the decision is considered sufficiently supported. *Rodenberg v. Colvin*, No. 13-cv-365, 2014 WL 4230924, at *6 (W.D. Wis. Aug. 26, 2014). The factors direct ALJs to consider: (1) whether the doctor has an examining relationship with the plaintiff; (2) whether the doctor has a treating relationship with the plaintiff, which also incorporates the length, nature, and extent of the relationship; (3) how well supported the doctor's opinion is by relevant

7

evidence; (4) how consistent the doctor's opinion is with the record as a whole; 5) whether the doctor has a relevant specialization; and 6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

In this case, the ALJ appropriately considered each material factor. He recognized that Dr. Melnyk and plaintiff had a long and continuing examining and treating relationship, which favored giving Dr. Melnyk's opinion greater weight. R. 32. The ALJ also weighed the supportability and consistency of Dr. Melnyk's opinion with the relevant evidence and the record as a whole. *Id.* Additionally, the ALJ acknowledged Dr. Melnyk's specialization as a psychiatrist in evaluating plaintiff's mental health. R. 31. Finally, the ALJ considered an additional factor, noting the beneficial effects of regular mental health care and treatment on plaintiff's condition as evidenced by the treatment notes in the medical record. R. 32. The ALJ's specific reference to treatment notes further indicates that he holistically considered the entire record instead of reviewing only the doctors' conclusions in their reports.

After considering these factors, the ALJ found that Dr. Melnyk's opinion lacked supportability and consistency with the evidence, which outweighed the favorable factors relating to the nature of Dr. Melnyk's relationship with plaintiff and his expertise. Most importantly, the ALJ cited the inconsistency between Dr. Melnyk's opinion and the overall evidence, including the treatment notes from Dr. Melnyk and other doctors. R. 480-670. These treatment notes indicated that plaintiff was receiving regular medical attention and that his mental health varied, depending on his adherence to his treatment plan and events in his life. *Id.* As observed by the ALJ, the treatment notes do not mention limitations of a severe nature that would support Dr. Melnyk's conclusions in the questionnaire he completed.

The ALJ also noted a specific "generally unremarkable mental status examination [conducted] during the relevant period" in supporting his decision. R. 32. The "generally

unremarkable mental status examination" is Exhibit 5F, a mental status examination conducted on October 20, 2010, and signed on October 25, 2010, by Dr. Hobart. R. 433-37. The examination differs significantly from Dr. Melnyk's opinion and concludes that plaintiff:

> has the ability to understand, remember, and carry out simple work-related instructions. His responses to supervisors and coworkers may be limited by his self-description of having problems with authority figures. He has quit and [been] terminated from many jobs, which also suggest[s] some difficulty with management. He did not demonstrate any difficulty with concentration, attention throughout my contact with him. His work pace is compromised to some extent by poor motivation as well as propensity for being ill. Routine work stressors may lead to an exacerbation of his somatic complaints. Adapting to change is unknown.

R. 437. Although the form and level of detail in Dr. Hobart's and Dr. Melnyk's respective opinions do not alone determine the appropriate weight to give to each, the contrast is telling. Whereas Dr. Hobart supported his conclusions with examples, Dr. Melnyk checked boxes on a questionnaire, without providing any explanation for their inconsistency with his own treatment notes. This omission undermines the value of the questionnaire. Even still, the ALJ gave Dr. Hobart's detailed opinion only "some weight," although he relied on it to support finding number four (the Listing determination) in discussing plaintiff's functional capabilities.

In his consideration of Dr. Melnyk's opinion, the ALJ refers to another section of his decision: his analysis regarding plaintiff's overall functional capabilities in finding number four. In doing so, he incorporates the latter into his reasoning for the former. In finding number four, the ALJ thoroughly analyzed the severity of plaintiff's mental impairments compared to Listings 12.02, 12.04, and 12.06. R. 25. He considered plaintiff's mental capacity and his ability to maintain concentration, persistence, and pace, relying on the medical evidence, Dr. Hobart's mental status examination, other medical assessments, and plaintiff's own testimony to find only a moderate limitation. *Id.* The ALJ concluded from the evidence that plaintiff "has been able to engage in goal-oriented activities throughout the relevant period such as caring for his

daughter and participating in his medical care. . . . During the consultative examination, he demonstrated no deficits in concentration, attention, or memory." R. 26. The inconsistency between this description of plaintiff's overall functional capabilities and Dr. Melnyk's opinion further undermined that opinion.

In addition to Dr. Melnyk's and Dr. Hobart's opinions, the ALJ also considered Dr. Larabee's opinion and hearing testimony. He accorded it "some weight" because although Dr. Larrabee gave conclusions that were consistent with the record, "he did not provide any rationale or reasons with regard to what he based such conclusions on." R. 31.

In his reply brief, plaintiff again argues that Dr. Melnyk's opinion should have been accorded more weight, specifically in relation to the other doctor opinions. He argues that it is improper for the ALJ to disregard a treating source opinion in favor of non-examining, state-appointed, reviewing doctors' opinions, referring to the evidence from Dr. Hobart and Dr. Larrabee. Dkt. 21, at 3-5. Notably, however, Dr. Hobart did more than review plaintiff's medical records; he actually examined plaintiff in person. More importantly, the cases that plaintiff cites for support are distinguishable.

Plaintiff is correct that an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citation omitted). However, in this case, the ALJ *does* support his finding with substantial evidence in the record, and *does not* rely solely on testimony of a non-examining consultant. The ALJ did not discredit Dr. Melnyk's opinion solely because it was inconsistent with both Dr. Hobart's and Dr. Larrabee's opinions. As described above, the ALJ highlighted the inconsistency not between the doctors, but between Dr. Melnyk's opinion and the *medical evidence*, including Dr. Melnyk's own treatment notes. This was within the ALJ's authority. *Dixon v. Massanari*, 270

10

F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.") (citation omitted); *see also Hofslien v. Barnhart*, 439 F.3d at 376-77 (urging the Social Security Administration to reexamine the treating physician rule because it offers little in the way of guidance to ALJs and there may be reasons to consider the treating physician's evidence as "just one more piece of evidence for the [ALJ] to weigh"). Lastly, the ALJ recognized the shortcomings of the each of the doctors' opinions and did not accord any of them more than "some weight." But, for the ALJ, the combination of Dr. Hobart's and Dr. Larrabee's opinions with the medical evidence outweighed Dr. Melnyk's opinion in this case.

Plaintiff's argument is that he does not like the reasons provided by the ALJ for discounting Dr. Melnyk's opinion. But in providing those reasons, the ALJ weighed the material factors and supported his findings with evidence from the record. This court cannot re-weigh the evidence or otherwise substitute its own judgment for that of the ALJ. *Clifford*, 227 F.3d at 869. Here, the ALJ built an "accurate and logical bridge from the evidence to [his] conclusion." *Zurawski*, 245 F.3d at 887. The court therefore affirms.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff David John Longway's application for disability insurance benefits and supplemental security income is AFFIRMED and David John

11

Longway's appeal is DISMISSED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 29th day of September, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge